## Donegal Mutual Insurance Company v. Transamerica Insurance Company

Before Doyle and Ross, JJ.

*Raymond H. Conaway*, of *Meyer, Darragh, Buckler, Bebenek & Eck,* for plaintiff.

*Robert G. Simasek*, of *Stein & Winters*, for defendant.

DOYLE, J., May 3, 1973.—Before the court for disposition is plaintiff's motion for summary judgment filed pursuant to Pennsylvania Rule of Civil Procedure 1035, it being, in effect, ancillary to a "case stated" based on the parties' filed, signed, *"Agreed Statement of Facts"* which we will treat as "admissions on file" within the meaning of Pa. R.C.P. 1035(a).

Robert Lilley (Lilley), the owner of a motor vehicle (the Lilley car), is insured by Donegal Mutual Insurance Company (Donegal) against liability resulting from operation of that car. Lilley delivered his car to Cochran Pontiac, Inc. (Cochran) for repairs. While his car was being repaired, Lilley leased another motor vehicle from Cochran (the Cochran car). Cochran was the named insured under a garage-owner's liability policy issued to it by defendant Transamerica Insurance Company (Transamerica). The lease between Cochran and Lilley provided, inter alia: "(Lilley) is advised to contact his insurance agent . . . to make certain that he is protected by his own insurance within the terms and conditions of this agreement."

While operating the Cochran car, Lilley collided with an automobile being operated by Daniel Varna (Varna). Varna sued Lilley for damages resulting from the collision and Lilley advised Donegal of the suit. Donegal tendered defense of the suit to Transamerica which denied coverage of the risk and refused to de-

fend. The suit was settled for $4,181.40, which includes costs and Donegal's counsel fees. In their "Agreed Statement of Facts" the parties agree that: the amounts of the settlement and counsel fees are fair and reasonable; the settlement amount is within the applicable limits of the Donegal policy and of the Transamerica policy; the limits of the Donegal policy exceed the applicable limit of the Pennsylvania Motor Vehicle Operator's Financial Responsibility Act of April 29, 1959.

In the policy issued to Lilley, Donegal contracts to pay on behalf of Lilley all sums which Lilley "shall become legally obligated to pay as damages . . . arising out of the ownership, maintenance or use of Lilley's automobile [or a non-owned automobile] . . ." and agrees "to defend any suit . . . seeking damages which are payable under the terms of [the] policy . . ."

The parties agree that the Cochran car was an automobile not owned by Lilley; was being temporarily used by Lilley with the permission of its owner (Cochran) as a substitute for the car which Lilley owned as to which Lilley was insured by Donegal and which had been withdrawn by Lilley from normal use for repairs within the meaning of the "temporary substitute automobile" clause of the Donegal policy.

Under the heading "Other Insurance," the Donegal policy provides:

"The insurance with respect to a temporary substitute . . . shall be excess insurance over any other valid and collectible insurance and *if the insured has other excess or contingent insurance applicable to loss arising out of the use of a temporary substitute . . . automobile* (Donegal) shall not be liable under this policy for a greater proportion of such loss than the amount which would have been payable under this policy (had no such other insurance existed) bears to the sum of

said amount and the amounts which would have been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable." (Italics supplied.)

The parties agree that Lilley was a garage customer of Cochran and was included within the coverage of the Transamerica policy subject to the language of the Transamerica policy under the title "Limited Coverage for Certain Insureds" which provides, inter alia:

"In consideration of the *reduced rate of premium* made applicable to the garage liability insurance, it is agreed that *garage customers are not insured* with respect to the automobile hazard *except* . . . :

"(1) *If there is other valid and collectible insurance,* whether primary, excess, or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, *no damages are collectible under this policy.*

"(3) *If there is no other valid and collectible insurance,* whether primary, excess or contingent, available to the garage customer, *this insurance shall apply,* but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit." (Italics supplied.)

Donegal first contends that the Transamerica policy constitutes the primary coverage for the payment of Varna's damages based on the fact that the Cochran car was the vehicle being operated and that the Donegal policy is merely excess coverage.

Normally, the liability insurance afforded to the operator of the motor vehicle actually being operated and involved in the collision is primary coverage and any other insurance applicable to the operator is excess coverage. See Grasberger v. Liebert & Obert, Inc., 335 Pa. 491 (1939); Continental National Insurance Co.

v. Ohio Farmers Insurance Co., 39 D. & C. 2d 747, 114 Pitts. L.J. 328 (1966); Carolina Casualty Insurance Co. v. Pa. Threshermen & Farmers' Mutual Casualty Insurance Co., 327 F. 2d 324 (3rd C.A., Pa., 1964); Pinkerton National Detective Agency, Inc. v. Penn-U-Drive et al., 113 Pitts. L.J. 36 (1964).

Application of this normal rule would solve the problem and Transamerica would be required to pay the loss but for certain language in the Transamerica policy. Under the heading "Limited Coverage for Certain Insureds," the Transamerica policy includes paragraphs (1) and (3), supra, and paragraph (2) [not contained in the "Agreed Statement of Facts"] which provides:

"If there is *other valid and collectible insurance* available to the garage customer, whether primary, excess or contingent, and *the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit,* then this insurance shall apply to the excess of damages up to such limit." (Italics supplied.)

Transamerica insists that no general rule exists under Pennsylvania law to determine primary coverage and that policy language is controlling. The Transamerica policy does not name Lilley as an insured and Lilley as lessee of Cochran is not included in any "omnibus insured" clause in that policy. In Grasberger, Pinkerton and Continental National, supra, the vehicle owner's policies contained omnibus insured clauses (had such a clause been included in the Transamerica policy, Lilley would have been an insured). The Transamerica policy specifically provides that Lilley, a garage customer, is not an insured.

Insurers assume only the risks set forth in their policy contracts. Defendant argues that in plaintiff's cited cases identical clauses in two policies were being

considered and that in each of those cited cases the person operating the automobile (here, Lilley) was, in effect, an insured under the omnibus insured clause. Defendant further argues that the cited cases do not control the instant litigation because the Transamerica policy specifically excludes Lilley as an insured and excludes him from any omnibus provision in consideration of reduced premiums paid by Cochran to Transamerica.

Transamerica relies upon Indiana Lumbermens Mutual Insurance Co. v. Mitchell, 285 F. Supp. 969 (1968), affirmed 409 F. 2d 392 (1969, Illinois), where a garage-owner's liability policy specifically excluded coverage normally afforded to a lessee of a garageman's car (here Lilley) where other valid and collectible insurance, either primary or excess, existed. Here, Transamerica claims that the coverage provided by Donegal is "other valid and collectible insurance" within the meaning of the Transamerica policy, and that whether it is primary, excess or contingent is irrelevant under "Limited Coverage for Certain Insureds": Section 2, quoted supra. In Lumbermens the court stated that its conclusion was bolstered by the fact that the garage-owner's liability policy included language reducing the premium payable by the garage owner in consideration of the limited coverage.

Essentially, the Transamerica policy provides contingent coverage to Lilley, the contingency being that Lilley have *no* coverage insuring him against liability for damage he inflicted on Varna. Thus, defendant argues that the Transamerica policy provides coverage only where the lessee (Lilley) of the garage-owner (Cochran) has *no* liability coverage. In the instant case, Lilley was insured by Donegal whose policy covered Lilley while he was operating the Cochran vehicle. The fact that the Donegal policy language pro-

vides that its coverage is to be treated as excess over "any other valid and collectible insurance and if the insured has other excess or contingent insurance applicable to loss arising out of the use of a temporary substitute or non-owned automobile, the company (Donegal) shall not be liable under this policy for a greater proportion, etc.," does not mean that Donegal has *completely* excluded itself in contract language from covering Lilley while operating the Cochran car.

At this point, Donegal would have us apply a rule similar to the doctrine of renvoi applied in conflicts of law situations, a species of legal badminton, with the insured as shuttlecock.

Alternatively, Donegal argues that the contingent liability or excess clause in the Transamerica garage-owners' policy and the provisions of the Donegal policy under the caption "Other Insurance" are mutually repugnant and a fortiori our decision must follow United States Fidelity and Guaranty Co. v. Liberty Mutual Insurance Co., 327 F. Supp. 462 (1971, Pa.), where similar clauses, held to be repugnant, were disregarded and each insurer was ordered to pay one-half of the loss; also citing Continental Casualty Co. v. Aetna Casualty and Surety Co., 33 D. & C. 2d 293, 113 Pitts. L.J. 40 (1963), where a similar result was reached by the court which held that excess insurance exists only where primary insurance exists and that to the extent that each insurer is primary the loss is shared.

Clearly, although the Transamerica policy would ordinarily provide primary coverage, its coverage under this policy with respect to Lilley is contingent upon Lilley having *no* other valid and collectible insurance. However, Lilley *does* have other valid and collectible insurance provided by Donegal, *but* the valid and col-

lectible insurance policy issued by Donegal provides that if Lilley has other excess or contingent insurance applicable to the loss, Donegal is liable *only on a pro rata basis*. One difficulty with that clause of the Donegal policy is that the language: "If the *'insured'* (Lilley) has other excess or contingent insurance." In this case, the Donegal's *insured* (Lilley) has no other excess or contingent insurance; *Cochran* has that other insurance and Lilley is neither a named insured nor is he an insured within any omnibus clause of the Transamerica policy.

The "other insurance" provisions of the Donegal policy and the contingent provisions of the Transamerica policy cannot be *completely* reconciled except by treating the clauses in both policies as being mutually repugnant in part. Thus, the Transamerica policy clause excluding coverage where no other valid and collectible insurance exists is only *partially* applicable to the case since the Donegal policy provides that, in such situation, Donegal is liable but only on a pro rata basis. Ergo, under the terms of the Donegal contract and the Transamerica contract, construed together, the most rational solution is to divide the loss equally between Donegal and Transamerica. Since Donegal has paid the entire loss, judgment must be entered in its favor for one-half of that loss, $2,090.70, against Transamerica.

An appropriate order will be entered.

## ORDER

And now, May 3, 1973, plaintiff's motion for summary judgment is granted in part and judgment is entered in favor of plaintiff and against defendant in the sum of $2,090.70.